DJL 1/19/15
MDC

| | | |
|---|---|---|
| AOC-105          Doc. Code: CI<br>Rev. 1-07<br>Page 1 of 1<br>Commonwealth of Kentucky<br>Court of Justice   www.courts.ky.gov<br>CR 4.02; CR Official Form 1 | **CIVIL SUMMONS** | Case No. 14-CI-1374<br>Court ☑ Circuit ☐ District<br>County Pike |

**PLAINTIFF**

Barry      Robinson

**VS.**

**DEFENDANT**

Pikeville Medical Center

**Service of Process Agent for Defendant:**

Pamela Todd May

127 Park Street

Pikeville, KY 41501

**THE COMMONWEALTH OF KENTUCKY**
**TO THE ABOVE-NAMED DEFENDANT(S):**

        You are hereby notified a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf** within **20 days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached Complaint.

        The name(s) and address(es) of the party or parties demanding relief against you are shown on the document delivered to you with this Summons.          ANNA PINSON SPEARS, CLERK

Date: December 29, 2014

_____ Clerk

By: _M. Potter_____ D.C.

---

| **Proof of Service** |
|---|
| This Summons was served by delivering a true copy and the Complaint (or other initiating document) to: |
| _____ |
| this _____ day of _____, 2_____.          Served by: _____ |
| _____ Title |

Served 12/30/14

# COMMONWEATH OF KENTUCKY PIKE CIRCUIT COURT DIVISION
## CIVIL ACTION NO. 14-CI-1394

BARRY ROBINSON, PLAINTIFF

v.

PIKEVILLE MEDICAL CENTER, INC. DEFENDANTS

FILED
ANNA PINSON SPEARS
DEC 29 2014
PIKE CIRCUIT DISTRICT COURT
BY:                          D.C.

Serve:      Pamela Todd May
            127 Park Street
            Pikeville, KY 41501

MARSHALL EMERGENCY SERVICES, MESA MEDICAL GROUP, PLLC

Serve:      Marshall Emergency Services
            1792 Alysheba Way, Ste. 150
            Lexington, KY 40509

PIKEVILLE RADIOLOGY, PLLC

Serve:      William Kendall
            161 College Street
            Suite 1
            Pikeville, KY 41501

TROY POPE, M.D.

Serve:      Marshall Emergency Services
            1792 Alysheba Way, Ste. 150
            Lexington, KY 40509

1

JOHN FLEMING, D.O.;

Serve:       911 Bypass Road
                Pikeville, KY 41501

ANTHONY P. KEENE, D.O.;

Serve:       911 Bypass Road
                Pikeville, KY 41501

KEVIN W. BRINKER, D.O.;

Serve:       Marshall Emergency Services
                1792 Alysheba Way, Ste. 150
                Lexington, KY 40509

THOMAS M. HUHN, M.D.;

Serve:       Marshall Emergency Services
                1792 Alysheba Way, Ste. 150
                Lexington, KY 40509

PAUL WEINBERGER, M.D.;

Serve:       2201 Lexington Avenue
                Ashland, KY 41101

CASSANDRA KIRKPATRICK, M.D.;

Serve:       911 Bypass Road
                Pikeville, KY 41501

2

WILLIAM A. KENDALL, M.D.;

Serve:          161 College St., Ste. 1
                Pikeville, KY 41501

NORMAN MAYER, M.D.;

Serve:          908 Bypass Road
                Pikeville, KY 41501

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Now comes your Plaintiff Barry Robinson by and through his counsel,

and does hereby complain to this Honorable Court as follows:

1.      Plaintiff Barry Robinson is a resident of Pike County, Kentucky.

2.      Defendant Pikeville Medical Center, Inc. is a Kentucky Corporation

which operates a hospital in Pike County, Kentucky.  Service of process may be

had upon it via its registered agent, Pamela Todd May at 127 Park Street,

Pikeville, Kentucky 41501.

3.      Defendant, Marshall Emergency Services\MESA Medical Group,

PLLC is a professional limited liability company and provides Emergency

Medicine physicians to staff the Emergency Department of Defendant Pikeville

Medical Center, Inc.'s hospital in Pike County, Kentucky.

4.      Defendant Troy Pope, M.D. is a licensed physician in the

Commonwealth of Kentucky and practices Emergency Department Medicine

3

at Pikeville Medical Center in Pike County, Kentucky.

5.     Defendant John Fleming, D.O. is a licensed physician in the Commonwealth of Kentucky and practices Emergency Department Medicine at Pikeville Medical Center in Pike County, Kentucky.

6.     Defendant Anthony P. Keene, M.D. is a licensed physician in the Commonwealth of Kentucky and practices Emergency Department Medicine at Pikeville Medical Center in Pike County, Kentucky.

7.     Defendant Kevin W. Brinker, D.O. is a licensed physician in the Commonwealth of Kentucky and practices Emergency Department Medicine at Pikeville Medical Center in Pike County, Kentucky.

8.     Defendant Thomas M. Huhn, M.D. is a licensed physician in the Commonwealth of Kentucky and practices Emergency Department Medicine at Pikeville Medical Center in Pike County, Kentucky.

9.     Defendant Paul Weinberger, M.D. is a licensed physician in the Commonwealth of Kentucky and practices Emergency Department Medicine at Pikeville Medical Center in Pike County, Kentucky.

10.     Defendant Cassandra Kirkpatrick, M.D. is a licensed physician in the Commonwealth of Kentucky and practices Emergency Department Medicine at Pikeville Medical Center in Pike County, Kentucky.

4

11.     Defendant William A. Kendall, M.D. is a licensed physician in the Commonwealth of Kentucky and practices Diagnostic Radiology at Pikeville Medical Center in Pike County, Kentucky.

12.     Defendant Pikeville Radiology, PLLC is a licensed professional limited liability company with offices and a resident agent located in Pike County, Kentucky.

13.     Defendant Norman W. Mayer, M.D. is a licensed physician in the Commonwealth of Kentucky and practices Neurosurgery at Pikeville Medical Center in Pike County, Kentucky.

14.     Each of the Emergency Department physician Defendants (collectively referred to as ED Defendants) and members of Defendant Pikeville Medical Center, Inc.'s staff (collectively referred to as Hospital Defendant) provided care and treatment for Plaintiff Barry Robinson beginning in September of 2013 and continued through February 17, 2014.

15.     As each of the ED Defendants saw Plaintiff Barry Robinson on his visits to the Emergency Department located in the Defendant Pikeville Medical Center's facility and as the actions concerned herein occurred in whole or in part in Pike County and as the amount in controversy exceeds the jurisdictional minimum of this Court and the US District Court for the Eastern

5

District of Kentucky, the Pike Circuit Court has both proper jurisdiction and venue to hear these claims.

16.    Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center on September 25, 2013 by ED physician Troy Pope, M.D. with complaints of an acute onset of severe back pain in the middle and lower portion of his back.  Dr. Pope failed to order imaging studies of the Plaintiff's back, including thoracic spine plain films, CT Scans, MRIs and Nuclear Bone Scans, failed to order CBC (Complete Blood Counts) and Erythrocyte Sedimentation Rate Laboratory studies to rule out an infectious etiology for the back pain, and failed to order an immediate Neurosurgical Consultation for a work-up of the cause of the acute back pain.

17.    Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center by Emergency Medicine specialist John Fleming, D.O. on September 27, 2013 with continuing severe back pain.  Dr. Fleming failed to order imaging studies of the Plaintiff's spine, including thoracic spine plain films, CT scans, MRIs, and Nuclear Bone Scans, failed to order a CBC and ESR laboratory studies to rule out an infectious etiology, and failed to order an immediate Neurosurgical Consultation for a work-up of the cause of Plaintiff's acute back pain.

6

18.    On October 11, 2013, MRIs of the Plaintiff's thoracic spine were performed and interpreted by William A. Kendall, M.D., a Diagnostic Radiologist.  Dr. Kendall saw "Paracentral herniation at the T5 – T6 level resulting in mild central stenosis", which was consistent with compression of the spinal cord by a cystic mass, but failed to recommend the performance of additional imaging studies of the thoracic spine to determine the etiology of the spinal cord stenosis, including additional MRIs, CT Scans, Nuclear Bone Scans, and further failed to recommend to the Plaintiff's Primary Care provider Joyce Little of Shelby Family Clinic, immediate clinical correlation with a Neurosurgical consultant for the presence of a possible space occupying spinal lesion.

19.    On November 3, 2013, Plaintiff Barry Robinson presented the ED of Defendant Pikeville Medical Center in a wheelchair due to a worsening of his back condition causing severe pain and weakness when ambulating, and was seen by Emergency Medicine physician Anthony P. Keene, D.O.  In spite of the progression of Plaintiff's back condition causing severe pain and weakness when ambulating requiring a wheelchair, with added rib pain, Dr. Keene failed to order imaging studies of the spine, including thoracic spine plain films, MRIs, CT Scans, Nuclear Bone Scans, failed to order a CBC and ESR laboratory

study to rule out an infectious etiology, and failed to order an immediate Neurosurgical consultation.  Dr. Keene discharged plaintiff from the Emergency Department with a diagnosis of "rib strain".

20.  On November 5, 2013, Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center by ED physician Troy Pope, M.D. with the same severe lower back and lower extremity pain and weakness, with added bowel dysfunction/incontinence resulting in nausea, green loose stool, and moderate to severe abdominal pain and symptoms consistent with "somebody beating him with a baseball bat".  Mr. Robinson came by ambulance, as he was unable to ambulate.  A CBC performed demonstrated an abnormally elevated white blood cell count of 11.9 (normal 2.7 – 6.9) consistent with an infection or inflammation.

21.    Yet Dr. Pope discharged Mr. Robinson from the Emergency Department in a wheel chair without obtaining consultations with an infectious disease specialist to rule out and locate the source of an obvious infection/inflammation, and failed to consult a neurosurgeon to work up Mr. Robinson's inability to walk normally without pain, as well as rule out a possible neurogenic bowel, especially in light of the patient's extensive past history significant for spinal disease.

8

22.     On November 10, 2013, Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center with continuing severe abdominal pain consistent with a neurogenic bowel.  Mr. Robinson was seen and evaluated by Emergency Medicine specialist Kevin W. Brinker, D.O.  A chest x-ray showed bilateral atelectasis, and an abdominal film showed increased colonic stool consistent with constipation, yet Mr. Robinson was discharged from the Emergency Department without a work-up of the cause of these conditions, with a diagnosis of "constipation" and a prescription for Colace medication.  Further, Dr. Brinker failed to perform a CBC to determine if the previously elevated WBC count had abated or worsened.

23.     On December 27, 2013, Plaintiff Barry Robinson presented to the ED of Defendant Pikeville Medical Center in a wheelchair, unable to walk without severe pain, complaining of severe back pain.  He was seen and evaluated by Emergency Medicine specialist Anthony P. Keene, D.O.  Mr. Robinson described his back pain as "stabbing", he stated that he was able to walk but with severe pain, and he was described as "tearful and moaning".  Mr. Robinson related these symptoms to an accident at work back in September, yet Dr. Keene failed to consult with a neurosurgeon to work up the source of the neurological symptoms and deficits, and failed to order a CT

9

Scan and/or MRI of the entire spine to look for the source the inability to ambulate without severe pain, and the patient's "stabbing" back pain. Instead, Mr. Robinson was discharged from the ED with prescriptions for anti-inflammatory and pain medications.

24.     On January 17, 2014, Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center by Anthony P. Keene, D.O. with what he reported as worsening of his chronic back pain. In spite of the continuing and reportedly worsening nature of Mr. Robinson's severe back pain, Dr. Keene failed to obtain a neurosurgical consultation to determine the cause of the severe and progressing back pain, and failed to order a CT Scan/MRI of the entire spine, including the thoracic spine, to rule out spinal pathology, and failed to perform a CBC to determine if the previously abnormally elevated WBC had resolved or persisted. Mr. Robinson was discharged from the ED without a diagnosis by Dr. Keene, and with prescriptions for anti-inflammatory medications and pain pills. Mr. Robinson reportedly left the ED with his girlfriend in a wheelchair, and required assistance into the wheelchair, and again out of the wheelchair into a truck.

25.     On January 19, 2014, Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center with continuing severe back pain that

he relates back to last fall.  Mr. Robinson reported additional signs of urinary

incontinence, in addition to his past complaints of bowel dysfunction and

incontinence, both consistent with neurogenic bowel/bladder.  Mr. Robinson

was seen and evaluated by ED physician Thomas M. Huhn, M.D.   Without

ordering imaging studies of the spine, nor obtaining a neurosurgical

consultation, Dr. Huhn attributed the bladder incontinence to the painful back

not allowing him to get to the toilet on time, rather than due to a "frank

incontinence" consistent with a neurogenic etiology.  Mr. Robinson was

summarily discharged from the ED with medication without a work up or

consultations with a neurosurgeon or urologist to determine the source of this

back pain and urinary incontinence complaints, respectively.  Once again, Mr.

Robinson was discharged home in a wheelchair.

26.    On January 25, 2014, Plaintiff Barry Robinson presented to the ED

in a wheelchair, unable to ambulate without severe pain, was seen by the ED

physician Paul Weinberger, D.O. in the ED of Defendant Pikeville Medical

Center with continued severe back pain radiating down his right thigh, along

with continued urinary incontinence.  Without obtaining a urology or

neurosurgical consultation, Dr. Weinberger apparently adopts the previous

diagnosis of "no true urinary incontinence – states because of back pain he is

11

unable to make it to the bathroom before he starts to urinate". Dr. Weinberger discharged Mr. Robinson from the ED in a wheelchair with the usual anti-inflammatory and pain medications.

27.     On February 3, 2014, Plaintiff Barry Robinson was seen by Neurosurgeon Norman Mayer, M.D., who was asked by Dr. Joyce Little to evaluate Mr. Robinson for his continuing and worsening severe back pain. Instead of ordering new MRIs of the entire spine, including the thoracic spine, Dr. Mayer merely reviewed the previous 10/11/2013 lumbar spine MRI, and apparently failed to review the 10/11/2013 MRI thoracic spine entirely. Without any work up of the cause of Mr. Robinson's unrelenting and progressing back pain, Dr. Mayer merely concluded that Mr. Robinson did not suffer from any back condition that could be relieved with neurosurgery. Importantly, in failing to review the 10/11/2013 Thoracic spine MRI, Dr. Mayer failed to appreciate that the Thoracic Spine MRI of 10/11/2013 demonstrated a "Paracentral herniation at the T5 – T6 level resulting in mild central stenosis" and thus, Dr. Mayer failed to perform a follow up study of same, to rule out a space occupying lesion of the spine.

28.     Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center on February 8, 2013 by ED physician Anthony P. Keene, D.O.

12

with a 10 day history of worsening bowel dysfunction and incontinence non-responsive to enemas. Radiographs of the abdomen demonstrated diffuse colonic distention with increased stool overlying the right colon, with a decompressed rectum and distal sigmoid colon. A distal colonic obstruction such as a neoplasm could not be excluded, and a colonoscopy was "advised" by the radiologist, yet the patient was discharged from the ED without admission or consultation with a gastroenterologist, and without a colonoscopy. Sinus tachycardia was noted on the monitor, consistent with an infection, yet no CBC was performed, and no Infectious Disease consultation was ordered to rule out an infection and determine a possible source for it. No neurosurgical consultation was obtained to rule out a neurogenic bowel, nor were any imaging studies of the spine performed, in spite of Mr. Robinson's continued inability to ambulate without severe pain.

29.    On February 14, 2014, Plaintiff Barry Robinson presented to the ED of Defendant Pikeville Medical Center in a wheelchair complaining of severe back pain, and was seen by Emergency Medicine specialist Cassandra Kirkpatrick, M.D. Dr. Kirkpatrick noted that Barry could ambulate without assistance, but that any motor movement worsens the pain. Mr. Robinson described his back and leg pain as "unbearable", stated that he started

coughing up blood about 3 days earlier, and that his legs feel like "Jell-O" when he tries to walk. In spite of these symptoms, Mr. Robinson still managed to walk with a steady gait. However, instead of obtaining a neurosurgical consultation to work up these worsening spinal complaints, Dr. Kirkpatrick merely discharged Mr. Robinson home in a wheelchair, with the usual medications.

30.    On February 16, 2014, Plaintiff Barry Robinson was taken via EMS to the ED of Defendant Pikeville Medical Center and seen by ER physician John Fleming, D.O. complaining of severe, stabbing pain in the middle of his back radiating to the lower back. Mr. Robinson also complained of several episodes of bowel and bladder incontinence. Dr. Fleming ordered an MRI of the lumbar spine only, in spite of complaints "in the middle of the back", and same was predictably read as demonstrating no change from the previous (1011-13 lumbar MRI), as the pathology causing Mr. Robinson's symptoms was located in the Thoracic spine. Mr. Robinson was discharged from the ED by Dr. Fleming, ambulatory but in pain, with usual medications.

31.    On February 17, 2014, Plaintiff Barry Robinson was seen in the ED of Defendant Pikeville Medical Center. A neurosurgical consultation was immediately obtained with neurosurgeon Dwayne W. Densler, M.D. Dr.

14

Densler immediately ordered a Thoracic Spine MRI.

32.     The Thoracic MRI of 2/17/2014 showed epidural abscess with some nerve impingement as well as discitis and osteomyelitis.

33.     Plaintiff Barry Robinson was immediately taken to the OR by neurosurgeon Dr. Dwayne Densler.  The epidural abscess was drained and a laminectomy was done from T7 – T10 to relieve compression on the spinal cord.

34.     An infectious disease physician was consulted and Plaintiff was placed on aggressive IV antibiotic coverage to eradicate the osteomyelitis and other areas of infection.

35.     Methecillin Sensitive Staphylococcus Aureas was determined to be the causative agent in the epidural abscess, discitis and osteomyelitis.

36.     A twelve-week course of intensive antibiotic therapy was anticipated and then completed by Plaintiff Barry Robinson.

37.     Following Plaintiff's discharge from Defendant Pikeville Medical Center, he was admitted at a long-term care facility for physical therapy. Plaintiff was discharged from the facility to home.

38.     Plaintiff continued his IV therapy at home with the assistance of home health workers and his girlfriend.

15

39.     Plaintiff utilizes a mechanical bed at home, along with other medical devices, in order to maintain himself with the complete assistance of others.

40.     Plaintiff most recently has undergone spinal surgery to stabilize his thoracic spine with disc replacements and metal rods due to the damage caused by the vertebral osteomyelitis.  Plaintiff's precise long-term prognosis is currently, unknown, but it is certain he will have a permanent paraplegia of his lower extremities for the remainder of his natural life.

41.     Plaintiff will need medical treatment in the future for the injuries he has endured due to his developing vertebral osteomyelitis and for the remainder of his natural life.  Plaintiff will need some level assistance with his activities of daily living now and in the future and may need the same for the remainder of his natural life.


## COUNT ONE: NEGLIGENCE OF TROY POPE, M.D.

42.     On September 25, 2013 at 1:11 a.m., Plaintiff Barry Robinson walked into the Pikeville Medical Center Emergency Department with severe back pain extending from the lower portion of the middle of his back, down to the low back.

43.    On September 25, 2013 at 1:11 a.m., Plaintiff Barry Robinson was seen and evaluated by Defendant Troy Pope, M.D.

44.    Defendant Troy Pope, M.D. took a history consisting of Barry Robinson sustaining a lifting injury helping a friend move that "flared-up" an old motor vehicle accident injury.

45.    According to the history taken by Defendant Troy Pope, M.D., Plaintiff Barry Robinson tried to work his job at McDonald's Restaurant but his back pain worsened.

46.    The history reports that Plaintiff Robinson rated his lower back pain 6/10, with burning pain down the back of his lower right leg.

47.    On examination, Troy Pope, M.D. revealed moderate tenderness with tender paraspinous muscles L2 - L5 and a positive SLR test.

48.    After only an hour in the ED, Plaintiff Barry Robinson was discharged with restrictions on heavy lifting and an off work order for 1-2 days.

49.    Defendant Troy Pope, M.D. diagnosed Plaintiff Barry Robinson with severe and worsening low back pain and sciatica and other symptoms.

50.    On September 25, 2013, Defendant Troy Pope, M.D. breached the standard of care in the following ways:

17

a. He failed to take an adequate history and physical examination of his patient Plaintiff Barry Robinson's loss of motor function, unrelenting and worsening back pain, and order a consultation with a neurosurgeon to determine the cause of the painful back symptoms;

b. He failed to order any imaging studies of the thoracic and lumbar regions;

c. He failed to order a consultation with a neurosurgeon, based upon the positive SLR test;

d. He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated;

e. He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

51. As a direct and proximate result of Defendant Troy Pope, M.D.'s breaches of the standard of care, Plaintiff Barry Robinson suffered from vertebral osteomyelitis of T5 - T9, an epidural cyst causing mass occupying lesions which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

18

## COUNT TWO: NEGLIGENCE OF JOHN FLEMING, D.O.

52.    On September 27, 2013 at 5:38 a.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department with constant severe back pain extending down his right leg.  On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant John Fleming, D.O.

53.    According to the history taken by Defendant John Fleming, D.O., Plaintiff Barry Robinson had the pain since unloading a truck at McDonald's Restaurant, where he was employed at the time.

54.    Defendant John Fleming, D.O.'s examination of his patient revealed moderate tenderness to the L2-S1 area with spasms.

55.    Based upon the history and examination, Defendant John Fleming, D.O. ordered a lumbosacral spinal plain film, AP and lateral views, which were interpreted as *"There is mild disk space narrowing at the disks between T12 and L4.  There is spurring seen throughout the lumbar region anteriorly and laterally. No fracture or subluxation is seen. Impression: Degenerative change."*

56.    After only an hour and one-half in the ED, Plaintiff Barry Robinson was discharged with instructions to follow up with his primary care physician, Joyce Little, M.D.

57.    On September 27, 2013, Defendant John Fleming, D.O. breached

19

the standard of care in the following ways:

a.      He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.      He failed to order any imaging studies of the thoracic spine;

c.      He failed to order proper imaging studies based upon the symptoms reported by his patient during the examination;

d.      He failed to order a consultation with a neurosurgeon, based upon the previous positive SLR test and continuing constant pain that Barry Robinson was experiencing;

e.      He failed to do a proper examination of his patient;

f.      He failed to review the records from the previous ED visit from two days before;

g.      He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated; and,

h.      He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

58.      As a direct and proximate result of Defendant John Fleming, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has

resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT THREE: NEGLIGENCE OF WILLIAM A. KENDALL, M.D.

59.     On October 11, 2013, Plaintiff Barry Robinson reported to the Pikeville Medical Center at the direction of his primary care provider, Joyce Little, APRN, so that an MRI could be performed to determine the source of his continuing and worsening back pain.

60.     On said date, Plaintiff Barry Robinson had an MRI done, which was interpreted by Defendant William A. Kendall, M.D., a board certified radiological physician practicing at the Pikeville Medical Center.

61.     On said date, Defendant William A. Kendall, M.D. saw "Paracentral herniation at the T-5 – T6 level resulting in mild central stenosis", which was consistent with compression of the spinal cord by a cystic mass.

62.     Defendant William A. Kendall, M.D. breached the standard of care on said date in the following ways:

a.      He failed to diagnose a possible space occupying lesion of the thoracic spine at T-5 – T-6 and recommending clinical correlation for possible infectious, metastatic, or other etiologies for said space occupying lesion;

21

b.      He failed to recommend the performance of a nuclear bone scan to rule out possible osteomyelitis of the Thoracic spine in the area of T-5 – T-6;

c.      He failed to recommend the performance of another MRI and/or CT Scan of the Thoracic spine in the area of T-5 – T-6 as further diagnostic evaluation;

d.      He failed to recommend a clinical correlation with a neurosurgeon to rule out osteomyelitis via a needle aspiration biopsy or surgical biopsy;

e.      He otherwise failed to meet the standard of care of a radiological physician practicing medicine in the Commonwealth of Kentucky.

63.      As a direct and proximate result of Defendant William A. Kendall, M.D.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T-5 – T-9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.


**COUNT FOUR: NEGLIGENCE OF ANTHONY P. KEENE, D.O.**

64.      On November 3, 2013 at 6:23 p.m., Plaintiff Barry Robinson Reported to the Pikeville Medical Center Emergency Department in a

wheelchair, as it was too painful for him to walk into the ED.

65.     On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Anthony Keene, D.O.

66.     According to the history taken by Defendant Anthony Keene, D.O., Plaintiff Barry Robinson reported that he had developed a cough and that he had been coughing so hard, he felt he had pulled muscles surrounding his ribs. Barry Robinson also reported that nothing improves the pain and it worsens with any movement.

67.     Defendant Anthony Keene, D.O. ordered a plain x-ray of the right ribs which was read as negative for right rib fracture and no acute cardiopulmonary process.

68.     In just over two hours, Plaintiff Barry Robinson was discharged from the ED with a diagnosis of rib strain.

69.     On November 3, 2013, Defendant Anthony P. Keene, D.O. breached the standard of care in the following ways:

a.     He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.     He failed to perform a proper physical examination;

c.     He failed to order the proper imaging studies to be performed

23

based upon his patient's symptoms;

    d.    He failed to order any laboratory testing to determine the nature of Barry Robinson's severe cough;

    e.    He failed to review Plaintiff Barry Robinson's chart on his previous visits to the ED;

    f.    He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated; and,

    g.    He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

70.    As a direct and proximate result of Defendant Anthony Keene, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T-5 – T-9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT FIVE: NEGLIGENCE OF TROY POPE, M.D.

71.    On November 5, 2013 at 8:26 a.m., Plaintiff Barry Robinson arrived at the Pikeville Medical Center Emergency Department by ambulance with a complaint of severe abdominal pain.

24

72.    On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Troy Pope, M.D., who is the same Defendant who had examined Plaintiff on September 25, 2014.

73.    Defendant Troy Pope, M.D. took a history consisting of Barry Robinson reporting that the abdominal pain had started at 12:00 a.m. and that it felt as if someone was hitting him with a ball bat.

74.    Also, according to the history taken by Defendant Troy Pope, M.D., Plaintiff Barry Robinson was suffering from nausea, but denied vomiting.

75.    The history also revealed that Plaintiff Robinson had pain in his epigastric region when he swallowed.

76.    Based upon the complaints reported by Plaintiff Robinson, Defendant Troy Pope, M.D. ordered a gallbladder ultrasound, which revealed a *"limited examination due to the gallbladder being incompletely distended, with no definite evidence of stones, and increased hepatic echotexture, most likely representing fatty infiltration."*

77.    Based upon the complaints reported by Plaintiff Robinson, Defendant Troy Pope, M.D. also ordered an abdominal and Pelvis CT with contrast which revealed *"1) No evidence of acute abnormality involving the abdomen or pelvis; 2) Small, fat containing, ventral wall hernia; 3) Incomplete*

25

*distention of the gallbladder with no definite evidence of pericholecystic*

*inflammatory chance."*

78.    Based upon the complaints reported by Plaintiff Barry Robinson,

Defendant Troy Pope, M.D. ordered a CBC and other laboratory tests, which

revealed an elevated WBC count, at 11.9; a somewhat elevated monocyte

count at 0.8; but chemistry, a metabolic panel and a urinalysis were also

performed and all these were essentially negative.

79.    After several hours in the ED, Plaintiff Barry Robinson was

discharged to home.

80.    On November 5, 2013, Defendant Troy Pope, M.D. breached the

standard of care in the following ways:

a.    He failed to take an adequate history of his patient Plaintiff Barry

Robinson;

b.    He failed to determine the cause of Plaintiff's abnormal laboratory

values;

c.    He failed to do a proper physical examination;

d.    He failed to order consultations with other physicians to assist

him in diagnosing Plaintiff's condition;

e.    He failed to review and consider the medical records from

26

Plaintiff's earlier visits to the Emergency Department;

      f.     He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated;

      g.    He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

     81.    As a direct and proximate result of Defendant Troy Pope, M.D.'s breaches of the standard of care, Plaintiff Barry Robinson suffered from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT SIX: NEGLIGENCE OF KEVIN BRINKER, D.O.

     82.    On November 10, 2013 at 9:05 a.m., Plaintiff Barry Robinson arrived at the Pikeville Medical Center Emergency Department by car with a complaint of severe abdominal pain.

     83.    On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Kevin W. Brinker, D.O.

     84.    Defendant Kevin Brinker, D.O. took a history consisting of Barry Robinson reporting that the abdominal pain had began a week earlier and that

he had been seen in the ED for it on November 3, 2013.

85.   Also, according to the history taken by Defendant Kevin Brinker, D.O., Plaintiff Barry Robinson was unable to have a bowel movement, despite laxatives and enemas at home without relief.

86.   Based upon the complaints reported by Plaintiff Robinson, Defendant Kevin W. Brinker, D.O. ordered a chest x-ray, which showed low lung volumes with atelectatic (collapse) change at both bases. There was no evidence of pneumothorax, pleural effusion, or focal regions of air space consolidation. Cardiomediastinal structures were within normal limits.  Bony thorax is intact.

87.   Based upon the complaints reported by Plaintiff Robinson, Defendant Kevin W. Brinker, D.O. ordered an abdominal x-ray showed no evidence of bowel obstruction. There was increased colonic stool. There was no evidence of free intraperitoneal air. There was no obvious organomegaly or suspicious calcifications, and all of the osseous structures appeared intact.

88.   Defendant Kevin W. Brinker, D.O.'s physical examination states that it was "negative" for back pain and myalgias" despite Plaintiff Barry Robinson's previous complaints about the same.

89.   After less than two hours in the ED, Plaintiff Barry Robinson was

28

discharged to home with no definitive diagnosis.

90.  On November 10, 2013, Defendant Kevin W. Brinkler, D.O. breached the standard of care in the following ways:

a.  He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.  He failed to determine the cause of Plaintiff's abnormal lung x-ray;

c.  He failed to do a proper physical examination;

d.  He failed to review and consider the medical records from Plaintiff's earlier visits to the ED;

e.  He failed to order laboratory studies to determine if they had improved from Mr. Robinson's November 3, 2013 visit to the ED;

f.  He failed to order other imaging studies that were warranted by Mr. Robinson's serial visits to the ED;

g.  He failed to obtain consultations with other physicians to determine an actual diagnosis;

h.  He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated;

i.  He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

29

91.    As a direct and proximate result of Defendant Kevin W. Brinker, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffered from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT SEVEN: NEGLIGENCE OF ANTHONY P. KEENE, D.O.

92.    On December 27, 2013 at 2:26 a.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department in a wheelchair, as it was too painful for him to walk into the ED.

93.    On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Anthony Keene, D.O., whom he had previously seen on November 3, 2013.

94.    According to the history taken by Defendant Anthony Keene, D.O., Plaintiff Barry Robinson reported that he had four hours of constant, severe, sharp pain in the middle back, non radiating, and which is now worse.

95.    According to the history taken by Defendant Anthony Keene, D.O., Plaintiff Barry Robinson reported that it is the same pain he has had "allegedly" since September of 2013, but no bowel or bladder incontinence, negative paresthesia, negative leg pain. "Patient has had multiple episodes

over past 3 months."

96.     Defendant Anthony Keene, D.O. did not order any laboratory studies or imaging studies, despite the severity of the symptoms he noted in the patient's chart.

97.     In just over one hour, Plaintiff Barry Robinson was discharged from the ED with pain medicine and steroids.

98.     On December 27, 2013, Defendant Anthony P. Keene, D.O. breached the standard of care in the following ways:

a.     He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.     He failed to perform a proper physical examination;

c.     He failed to order any imaging studies to be performed based upon his patient's symptoms;

d.     He failed to obtain any consultations with other physicians to assist him in diagnosing Plaintiff's condition;

e.     He failed to order any laboratory testing;

f.     He failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

g.     He failed to follow up on the care of his patient, Barry Robinson, to

make certain that he was being properly evaluated and treated; and,

h.      He otherwise failed to meet the standard of care for physicians

practicing medicine in the Commonwealth of Kentucky.

99.      As a direct and proximate result of Defendant Anthony Keene,

D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from

vertebral osteomyelitis of T5 - T9, which worsened over time, and has

resulted in significant pain and injury to him, including paraplegia of his lower

extremities.


## COUNT EIGHT: NEGLIGENCE OF ANTHONY P. KEENE, D.O.

100.    On January 17, 2014 at 10:49 p.m., Plaintiff Barry Robinson

reported to the Pikeville Medical Center Emergency Department with severe

back pain.

101.    On said date, Plaintiff Barry Robinson was seen and evaluated by

Defendant Anthony Keene, D.O., whom he had previously seen on November

3, 2013 and December 27, 2013.

102.    According to the triage notes, Plaintiff Barry Robinson reported

that he had chronic back pain since September of 2013, which he thought was

due to an injury at work. He explained that the pain had worsened this

evening, which was his reason for returning to the ED.

103.   According to the history taken by Defendant Anthony Keene, D.O.,
Plaintiff Barry Robinson reported that his pain was 8/10 and that he was only
getting limited relief from the pain medicine he had been receiving.

104.   Defendant Anthony Keene, D.O. did not order any laboratory
studies or imaging studies, despite the severity of the symptoms he noted in
the patient's chart.

105.   In just over two hours, Plaintiff Barry Robinson was discharged
from the ED with pain medicine, prednisone and a pain shot injection in his
right hip.

106.   On January 17, 2014, Defendant Anthony P. Keene, D.O. breached
the standard of care in the following ways:

a.   He failed to take an adequate history of his patient Plaintiff Barry
Robinson;

b.   He failed to perform a proper physical examination;

c.   He failed to order any imaging studies to be performed based
upon his patient's symptoms;

d.   He failed to obtain any consultations with other physicians to
assist him in diagnosing Plaintiff's condition;

33

e.    He failed to order any laboratory testing;

f.    He failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

g.    He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated; and,

h.    He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

107.   As a direct and proximate result of Defendant Anthony Keene, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT NINE: NEGLIGENCE OF THOMAS M. HUHN, M.D.

108.   On January 19, 2014 at 4:29 p.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department with severe back pain.

109.   On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Thomas M. Huhn, M.D.

34

110.   According to the triage notes, Plaintiff Barry Robinson reported that he had chronic back pain since September of 2013. He also reported that he had loss of bladder control three days ago.

111.   According to the history taken by Defendant Thomas M. Huhn, M.D., Plaintiff Barry Robinson reported that his pain was so bad he was having trouble getting to the bathroom in time to urinate and had incidents where he suffered a small amount of urination before making it to the toilet.

112.   Defendant Thomas M. Huhn, M.D. seemingly discounted the history provided by his patient concerning his incontinence.

113.   In under two hours, Plaintiff Barry Robinson was discharged from the ED in a wheelchair in with pain medicine.

114.   On January 19, 2014, Defendant Thomas M. Huhn, M.D. breached the standard of care in the following ways:

a.      He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.      He failed to perform a proper physical examination;

c.      He failed to order any imaging studies to be performed based upon his patient's symptoms;

d.      He failed to obtain any consultations with other physicians to

assist him in diagnosing Plaintiff's condition;

e.     He failed to order any laboratory testing;

f.     He failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

g.     He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated; and,

h.     He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

115.   As a direct and proximate result of Defendant Thomas M. Huhn, M.D.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT TEN: NEGLIGENCE OF PAUL WEINBERGER, D.O.

116.   On January 25, 2014 at 10:49 p.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department with severe back pain.

117.   On said date, Plaintiff Barry Robinson was seen and evaluated by

Defendant Paul Weinberger, D.O.

118.   According to history taken by Defendant Paul Weinberger, D.O.,
Plaintiff Barry Robinson reported that he had chronic back pain and that it
had gotten worse in the past week.

119.   According to the history taken by Defendant Paul Weinberger,
D.O., Plaintiff Barry Robinson has been experiencing these same symptoms for
several months.

120.   According to the history taken by Defendant Paul Weinberger,
D.O., Plaintiff Barry Robinson reported that his pain radiating down his right
leg with accompanying numbness to the right thigh. Defendant Paul
Weinberger, D.O. discounted Plaintiff's claims of urinary incontinence.

121.   Defendant Paul Weinberger, D.O. did not order any laboratory
studies or imaging studies, despite the severity of the symptoms he noted in
the patient's chart.

122.   In just under two hours, Plaintiff Barry Robinson was discharged
from the ED with pain medicine and in a wheelchair.

123.   On January 25, 2014, Defendant Paul Weinberger, D.O. breached
the standard of care in the following ways:

a.      He failed to take an adequate history of his patient Plaintiff Barry

37

Robinson;

    b.    He failed to perform a proper physical examination;

    c.    He failed to order any imaging studies to be performed based upon his patient's symptoms;

    d.    He failed to obtain any consultations with other physicians to assist him in diagnosing Plaintiff's condition;

    e.    He failed to order any laboratory testing;

    f.    He failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

    g.    He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated; and,

    h.    He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

124.  As a direct and proximate result of Defendant Paul Weinberger, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT ELEVEN: NEGLIGENCE OF DEFENDANT NORMAN MAYER, M.D.

125.   Defendant Norman Mayer, M.D., a board certified Neurosurgeon saw and evaluated Barry Robinson on February 3, 2014.

126.   Defendant Norman Mayer, M.D., breached the standard of care in the following ways:

a.    He failed to order imaging studies of the Thoracic Spine consisting of a CT Scan, MRI and Nuclear Bone Scan to rule out osteomyelitis;

b.    He failed to perform a thorough neurological examination;

c.    He failed to review the 10/11/2013 MRI of the Thoracic spine evaluated by Defendant William Kendall, M.D.;

d.    He failed to diagnose Mr. Robinson's osteomyelitis and epidural cyst of the Thoracic spine;

e.    He failed to otherwise meet the standard of care of neurosurgeons practicing medicine in the Commonwealth of Kentucky.

127.   As a direct and proximate result of Defendant Norman Mayer, M.D.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T-5 – T-9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

39

## COUNT TWELVE: NEGLIGENCE OF ANTHONY P. KEENE, D.O.

128.   On February 8, 2014 at 7:36 p.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department with severe abdominal pain.

129.   On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Anthony Keene, D.O., whom he had previously seen on November 3, 2013, December 27, 2013 and January 17, 2014.

130.   According to history taken, Plaintiff Barry Robinson reported that he had severe abdominal pain rating at 8/10.

131.   According to the history taken by Defendant Anthony Keene, D.O., Plaintiff Barry Robinson reported that his pain was 8/10 and ten day history of constipation.

132.   Defendant Anthony Keene, D.O. did not order any laboratory studies or imaging studies, despite the severity of the symptoms he noted in the patient's chart.

133.   Defendant Anthony Keene, M.D. ordered an abdominal x-ray and a chest x-ray. The chest film was compared to the earlier film of 11/10/13. The radiologist reported only that, "The chest radiograph demonstrates *adequate*

40

*lung volumes.*" The abdominal film continued to demonstrate "diffuse colonic distension with decompression at the level of the rectum and distal sigmoid colon. Distal colonic obstruction such a neoplasm could not be excluded, and a colonoscopy was advised.

134.   In just over two hours, Plaintiff Barry Robinson was discharged from the ED with instructions to follow up with his primary care physician.

135.   On February 8, 2014, Defendant Anthony P. Keene, D.O. breached the standard of care in the following ways:

a.      He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.      He failed to perform a proper physical examination;

c.      He failed to order any imaging studies to be performed based upon his patient's symptoms;

d.      He failed to obtain any consultations with other physicians to assist him in diagnosing Plaintiff's condition;

e.      He failed to order any laboratory testing;

f.      He failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

g.      He failed to follow up on the care of his patient, Barry Robinson, to

41

make certain that he was being properly evaluated and treated; and,

h.     He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

136.   As a direct and proximate result of Defendant Anthony Keene, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT THIRTEEN: NEGLIGENCE OF CASSANDRA KIRKPATRICK, M.D.

137.   On February 14, 2014 at 3:41 p.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department in a wheelchair with "unbearable" back pain.

138.   On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant Cassandra Kirkpatrick, M.D.

139.   According to history taken, Plaintiff Barry Robinson reported that he had severe back pain rating it 10/10 on the pain scale.

140.   According to the history taken by Defendant Cassandra Kirkpatrick, M.D., Plaintiff Barry Robinson reported that his legs felt like Jell-O

when he tried to walk and that he was coughing up blood three days earlier.

141.   Defendant Cassandra Kirkpatrick, M.D. did not order any laboratory studies or imaging studies, despite the severity of the symptoms she noted in the patient's chart.

142.   In less than six hours, Plaintiff Barry Robinson was discharged from the ED with instructions to follow up with his primary care physician.

143.   On February 14, 2014, Defendant Cassandra Kirkpatrick, M.D., breached the standard of care in the following ways:

a.     She failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.     She failed to perform a proper physical examination;

c.     She failed to order any imaging studies to be performed based upon his patient's symptoms;

d.     She failed to obtain any consultations with other physicians to assist him in diagnosing Plaintiff's condition;

e.     She failed to order any laboratory testing;

f.     She failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

g.     She failed to follow up on the care of his patient, Barry Robinson,

43

to make certain that he was being properly evaluated and treated; and,

     h.     She otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

     144.  As a direct and proximate result of Defendant Anthony Keene, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

### COUNT FOURTEEN: NEGLIGENCE OF JOHN FLEMING, D.O.

     145.  On February 16, 2014 at 7:30 p.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department via ambulance.

     146.  On said date, Plaintiff Barry Robinson was seen and evaluated by Defendant John Fleming, D.O., a physician he had previously seen on September 27, 2013.

     147.  According to history taken, Plaintiff Barry Robinson reported that he had severe back pain starting in the mid back and radiating to the lower back.

148.   According to the history taken by Defendant John Fleming, D.O., Plaintiff Barry Robinson reported that the pain was in his mid back and radiating to his lower back.

149.   On February 16, 2014, Defendant John Fleming, D.O., breached the standard of care in the following ways:

a.   He failed to take an adequate history of his patient Plaintiff Barry Robinson;

b.   He failed to perform a proper physical examination;

c.   He failed to order appropriate imaging studies to be performed based upon his patient's symptoms;

d.   He failed to obtain any consultations with other physicians to assist him in diagnosing Plaintiff's condition;

e.   He failed to order any laboratory testing;

f.   He failed to review Plaintiff Barry Robinson's chart of his previous visits to the ED;

g.   He failed to follow up on the care of his patient, Barry Robinson, to make certain that he was being properly evaluated and treated; and,

h.   He otherwise failed to meet the standard of care for physicians practicing medicine in the Commonwealth of Kentucky.

45

150.   Within two hours of his arrival at the ED, Plaintiff Barry Robinson was discharged from the ED with prednisone and pain medications.

151.   As a direct and proximate result of Defendant John Fleming, D.O.'s breaches of the standard of care, Plaintiff Barry Robinson suffers from vertebral osteomyelitis of T5 - T9, which worsened over time, and has resulted in significant pain and injury to him, including permanent paraplegia of his lower extremities.

## COUNT FIFTEEN: NEGLIGENCE OF DEFENDANT PIKEVILLE MEDICAL CENTER

152.   On February 17, 2014 at 7:30 p.m., Plaintiff Barry Robinson reported to the Pikeville Medical Center Emergency Department via ambulance reportedly in critical condition.

153.   Plaintiff had not been previously diagnosed with Methecillin Sensitive Staphylococcus Aureas. Upon information and belief, Plaintiff Barry Robinson contracted the infection while a patient at Defendant Pikeville Medical Center earlier in 2013 when he was treated there for

154.   Defendant Pikeville Medical Center had a duty to clean and maintain its facility so as to avoid the spread of infections, including Methecillin Sensitive Staphylococcus Aureas.

155.   Defendant Pikeville Medical Center had a duty to establish policies and procedures for the prevention, diagnosis and treatment of hospital acquired infections like Methecillin Sensitive Staphylococcus Aureas.

156.   Defendant Pikeville Medical Center failed to meet its duty by failing to exercise due care in diagnosing the infection, in treating the infection and in preventing the spread of the infection to other patients like Barry Robinson.

157.   Plaintiff Barry Robinson did not discover that he was infected with Methecillin Sensitive Staphylococcus Aureas until his physicians discovered it on February 17, 2014.

158.   Plaintiff Barry Robinson was prevented from discovering the nature of his illness due to the negligence of all of the ED Defendants in this action because they failed to order proper laboratory testing to determine the source of his illness.

159.   Defendant Pikeville Medical Center, Inc. failed to warn Plaintiff that he may become infected with the Methecillin Sensitive Staphylococcus Aureas while a patient at its facility.

160.   That the actions or inactions of the agents and/or employees of Pikeville Medical Center were a substantial factor in causing Plaintiff's

47

Vertebral osteomyelitis resulting in paraplegia of his lower extremities.

## COUNT SEVENTEEN: VICARIOUS LIABILITY OF DEFENDANT, MARSHALL EMERGENCY SERVICES\MESA MEDICAL GROUP, PLLC

162.   Upon information and belief one or more of the above-named

Defendants was/were employed by Marshall Emergency Services/MESA

Medical Group, PLLC at the time of their actions and/or inactions detailed

above.  Those employees were acting on behalf of and/or in the best interest

of their employer, Marshall Emergency Services/MESA Medical Group, PLLC

and were in the course and scope of said employment when the above-

mentioned actions and/or inactions occurred and as a result of their

employment relationship, Marshall Emergency Services/MESA Medical Group,

PLLC should be held vicariously liable for any and all damages sustained by

Barry Robinson as a result of its agents and/or employees actions and/or

inactions.

## COUNT EIGHTEEN: VICARIOUS LIABILITY OF DEFENDANT, PIKEVILLE RADIOLOGY, PLLC

163.   Upon information and belief one or more of the above-named

Defendants was/were employed by Pikeville Radiology, PLLC at the time of

their actions and/or inactions detailed above.  Those employees were acting

48



on behalf of and/or in the best interest of their employer, Pikeville Radiology,

PLLC and were in the course and scope of said employment when the above-

mentioned actions and/or inactions occurred and as a result of their

employment relationship, Pikeville Radiology, PLLC should be held vicariously

liable for any and all damages sustained by Barry Robinson as a result of its

agents and/or employees actions and/or inactions.

## COUNT NINETEEN: BREACH OF EMTALA REGULATIONS BY PIKEVILLE MEDICAL CENTER

164. Medicare participating hospitals must meet the Emergency Medical

Treatment and Labor Act (EMTALA) statute codified at §1867 of the Social

Security Act, (the Act) the accompanying regulations in 42 CFR §489.24 and

the related requirements at 42 CFR 489.20(l), (m), (q), and (r).

165. EMTALA requires hospitals with emergency departments to

provide a medical screening examination to any individual who comes to the

emergency department and requests such an examination, and prohibits

hospitals with emergency departments from refusing to examine or treat

individuals with an emergency medical condition (EMC). The term "hospital"

includes critical access hospitals. The provisions of EMTALA apply to all

individuals (not just Medicare beneficiaries) who attempt to gain access to a

hospital for emergency care. The regulations define "hospital with an emergency department" to mean a hospital with a dedicated emergency department (ED). In turn, the regulation defines "dedicated emergency department" as any department or facility of the hospital that either (1) is licensed by the state as an emergency department; (2) held out to the public as providing treatment for emergency medical conditions; or (3) on one-third of the visits to the department in the preceding calendar year actually provided treatment for emergency medical conditions on an urgent basis.

166. Defendant Pikeville Medical Center is a Medicare participating hospital under the Emergency Medical Treatment and Labor Act (EMTALA) statute and its accompanying regulations.

167. Defendant Pikeville Medical Center violated EMTALA and its accompanying regulations in the lack of care and treatment of Barry Robinson.

## COUNT TWENTY: PUNITIVE DAMAGES

168. The actions or inactions of the Defendants mentioned above rose to the level of recklessness and/gross negligence thereby entitling Barry

50

Robinson to punitive damages against the Defendants.

Wherefore, Plaintiff demands the following relief:

1. Judgment against all of the Defendants in an amount that will fairly compensate him for all damages he is entitled to recover for pain, suffering, mental anguish, loss of enjoyment of life, loss of use of his lower extremities, and for all other non-economic damages he is entitled to recover against these Defendants for their negligence which was a substantial factor in bringing about the injuries and damages he has received.

2. Judgment against all of the Defendants for his medical expenses that he has incurred to date and for those medical expenses that he will incur for the foreseeable future and those he will incur for the remainder of his natural life.

3. Judgment against all of the Defendants for his costs and fees incurred in prosecuting this action.

4. Judgment against all of the Defendants for the attorney's fees he will incur in prosecuting this action.

5. Judgment for all other items of damage recoverable under the statutory and common law of the Commonwealth of Kentucky.

6. Punitive damages for any and all willful, reckless and/or grossly negligent actions as shown through discovery.

7. Attorney's fees, expenses, punitive damages and all other damages he may recover for the violations of EMTALA and its accompanying regulations.

8. A Trial by Jury.

Respectfully submitted,

Kyle R. Salyer
Salyer Law Office, PLLC
P.O. Box 2213
455 2nd St.
Paintsville, KY 41240
T 606.789.1135
F 888.751.8828
Kyle.salyer@salyerlaw.com
*Counsel for Plaintiff Barry Robinson*